IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br>v.<br><br>ISAIAH ELDEN KINGSTON,<br><br>                   Defendant. | **ORDER DENYING DEFENDANT'S MOTION FOR REVIEW OF DETENTION**<br><br>Case No. 2:18-CR-365<br><br>District Judge Jill N. Parrish |

      Defendant Isaiah Elden Kingston is charged with (1) conducting a financial transaction involving property known to be the proceeds of an unlawful activity, with knowledge that such transaction is designed "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of" the unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and (2) knowingly engaging in a monetary transaction in criminally derived property in violation of 18 U.S.C. § 1957.

      Mr. Kingston was arrested pursuant to an arrest warrant on August 23, 2018. The government moved to detain him on August 24, 2018, (ECF No. 9), and Mr. Kingston filed a memorandum in opposition on August 29, 2018, (ECF No. 19). Magistrate Judge Wells conducted a detention hearing on August, 31, 2018, at the conclusion of which she ruled from the bench that the government had met its burden to detain Mr. Kingston. (ECF No. 37).

      Mr. Kingston subsequently filed a motion to review his detention, (ECF No. 35), and this court scheduled a hearing for September 12, 2018. On the basis of evidence taken and arguments

presented at that hearing,[1] the many memoranda and exhibits submitted to this court and Magistrate Judge Wells, and a review of relevant law, the court finds that the government has met its burden to prove that there are no combination of conditions of release that will reasonably assure the appearance of the defendant.

## I. LEGAL STANDARD

### A. STANDARD OF REVIEW

The court considers the defendant's motion for a review of the magistrate judge's detention order under 28 U.S.C. § 3145(b) and DUCrimR 57-16(a)(1).[2] Accordingly, the court conducts a de novo review of the government's request for detention without deference to the magistrate judge's findings or conclusions.[3]

---

[1] Defense counsel complains that "the Government commanded the majority of the time during the hearing" and that "[t]here was not further time for counsel for Mr. Kingston to provide final proffers and argument." ECF No. 50 at 2. The court does not begrudge defense counsel for his mistaken calculation of time at the hearing, but it does take issue with his disingenuous suggestion that he was not afforded an adequate opportunity to be heard. The court could not have been clearer about its willingness to reconvene in just two days to accommodate further argument. After explaining that the hearing "could continue [] on Friday if we can't finish it in the next thirty minutes," the court went out of its way to assure the parties that "[t]his is an important issue and I want to give everyone the time they need to present what they want to present." Indeed, after counsel for the government indicated that they were leaving town before Friday, the court made clear that this was no impediment because the court could "convene something via skype on Friday." Ultimately, the parties seemed to agree that the court's grant of leave to file a 5-page argument in lieu of additional oral arguments was adequate. Because defense counsel did not accept the court's unambiguous offers to accommodate oral argument, his complaint that he was denied that opportunity rings hollow.

[2] "Any party is entitled to seek review of a magistrate judge's order releasing or detaining a defendant. . . . ."

[3] DUCrimR 57-16(a)(1) (providing for de novo review of detention orders); *see also United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (holding that district court's review under subsection (a) of §3145 is de novo).

B. STANDARD FOR THE RELEASE OR DETENTION OF A DEFENDANT PENDING TRIAL

When, as here, a case involves a serious risk that a defendant will flee or "attempt to obstruct justice, or threaten, injure, or intimidate a prospective witness[,]" a court should hold a hearing to determine whether there are conditions of release that will reasonably assure the defendant's appearance at trial. In making this determination, a court is to consider the following factors:

(1) the nature and circumstances of the offense[s] charged . . . ;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[4]

To obtain detention, the government must establish either (1) that the defendant poses a "serious risk of flight," which must be proved by a preponderance of the evidence; or (2) that the defendant presents a danger to the community, which must be proved by clear and convincing evidence.[5]

## II.  ANALYSIS

Upon consideration of the four factors enumerated above, the court finds that there are no conditions of release that will reasonably assure Mr. Kingston's appearance.

---

[4] 18 U.S.C. § 3142(g).

[5] *Cisneros*, 328 F.3d at 616.

First, the court considers the nature and circumstances of the offense charged. If convicted, Mr. Kingston faces a statutory maximum of 30 years in prison for his alleged role in laundering the proceeds of a tax-refund scheme that defrauded the federal government in the amount of $511 million. The court finds that both the lengthy sentence and the circumstances of the offense charged weigh in favor of detention.

Second, as to the weight of the evidence against Mr. Kingston, the government has set forth strong evidence of Mr. Kingston's knowledge of the fraud whose proceeds he is alleged to have laundered. Indeed, the government presented evidence that tended to establish that Mr. Kingston had traveled to the British Virgin Islands for the purpose of creating a shell entity in furtherance of the fraudulent tax scheme. The government has further adduced strong evidence that Kingston, as CFO and 50% owner of Washakie Renewable Energy ("WRE"), the company that served as the vehicle for the fraud, conducted financial transactions with knowledge that they were designed to launder fraud proceeds.

Third, the court considers the history and characteristics of Mr. Kingston. The court finds that this factor weighs heavily in favor of detention. One consideration in this inquiry is a review of the defendant's financial resources. Mr. Kingston has put considerable effort into the portrayal of his current financial condition as being fundamentally inconsistent with the ability to flee. But Mr. Kingston has failed to set forth any plausible argument to reconcile the gulf between his claimed financial condition and the evidence showing that he initiated wire transfers totaling $52 million to Turkish bank accounts.[6] Special Agent Berrett testified that it is virtually impossible to

---

[6] Of particular concern is Mr. Kingston's transfer of $483,000 to a Turkish bank account for the express purpose of paying the "VAT [i.e., Value Added Tax] of the waterside house (mansion)." (ECF No. 30, Ex. I). At the hearing for this motion, the government also proffered evidence that established the viability of the use of private aircraft to depart the United States without a passport.

4

obtain bank or real estate records from Turkey, and Mr. Kingston has offered no information to convince the court that he does not presently have access to or control over Turkish assets. As a result, the court does not credit Mr. Kingston's representations about his finances.

Additionally, although Mr. Kingston does not have a criminal history, he has exhibited a concerning pattern of intentionally flouting our system of justice. Mr. Kingston does not dispute that he perpetrated a fraud on the court in civil litigation in the Southern District of New York by submitting a false affidavit. (*See* Exs. J-1, J-2, J-3 at ECF Nos. 30-3, 30-4, 30-5). Although the parties disagree about which of the two contradictory statements Mr. Kingston submitted in those proceedings was false, the court finds that it is more likely than not that Isaiah's statement declaring that WRE held significant cash and real estate in Turkey was true. The court further infers that the affidavit retracting that assertion was a deliberate attempt to evade discovery into the Turkish assets.

Defendant remonstrates that the above conduct and other bad acts the government relies on in support of continued detention were confined to a time frame during which the charged conduct is alleged to have occurred. Accordingly, the defendant urges, those acts should play no role in this court's review of detention. But his argument's premise is plainly incorrect. In January of 2017, nearly a year after WRE's offices were raided in connection with a federal investigation into the tax fraud, Mr. Kingston acted in furtherance of a scheme to (1) intimidate grand jury witnesses; (2) pay bribes to a government official in exchange for the destruction of evidence; and (3) otherwise obstruct or delay grand jury proceedings. This scheme was directed at preventing the materialization of the indictment Mr. Kingston now faces.[7] These acts cannot be said to be

---

[7] This fact also serves to undermine defendant's argument that if he had intended to flee he would have done so in the roughly two years between the raid of WRE and his arrest. On the basis of communications that Isaiah and co-defendant Jacob Kingston received from the obstruction

indivisible from the charged conduct. Instead they amount to a separate, highly concerning (though apparently amateurish) attack on the criminal justice system. And though Mr. Kingston now represents himself as a mere "errand boy" in this effort, his texts make clear that he knew about and acted to support its full scope.

These acts additionally implicate the fourth factor to be analyzed under § 3142(g), "the nature and seriousness of the danger to any person or the community that would be posed by the" defendant's release. As to this concern, the court notes that Special Agent Berrett credibly testified that the government deployed a protective detail to safeguard at least one of the witnesses believed to be the object of defendant's intimidation efforts.

Defendant submits that this court can impose conditions that would ameliorate the risk of nonappearance. But for conditions to be effective, there must be a level of buy-in by the defendant sufficient to result in compliance. Given the defendant's history as detailed above, the court has no confidence that he will obey any proposed conditions. The defendant has given the court no reason to believe that he will approach conditions imposed by this court any differently than he approached his duty of candor to the district court in the Southern District of New York. Nor has the defendant persuaded the court that he will abide by conditions that will assure his noninvolvement with any further attempts to obstruct federal investigative processes. Because the defendant has the motive and ability to abscond to a country that presently refuses to extradite individuals to the United States, and further because the court does not believe that any

---

scheme's intermediary, it is more likely than not that Isaiah believed that he had successfully thwarted the return of any indictments. Operating under this belief, Isaiah would have had no incentive to attempt to flee from the United States. The present indictment has materially changed this calculus.

combination of conditions will reasonably assure his appearance, the defendant is ordered detained pending trial.

### III.  ORDER

It is ORDERED that Mr. Kingston's Motion for Review of Detention, (ECF No. 35), is DENIED. Defendant is ordered detained pending trial.

Signed September 18, 2018

            BY THE COURT

            *[signature]*

            _____
            Jill N. Parrish
            United States District Court Judge