JOHN W. HUBER, United States Attorney (#7226)
ARTHUR J. EWENCZYK, Special Assistant United States Attorney (NY #5263785)
LESLIE A. GOEMAAT, Special Assistant United States Attorney (MA #676695)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682
Email: arthur.j.ewenczyk@usdoj.gov
       leslie.a.goemaat@usdoj.gov
       richard.m.rolwing@usdoj.gov
       john.e.sullivan@usdoj.gov

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 18-CR-365-JNP |
| Plaintiff, | : | |
| | | RESPONSE OF UNITED STATES TO |
| v. | : | ISAIAH KINGSTON'S MOTION FOR |
| | | RECONSIDERATION OF DETENTION |
| JACOB ORTELL KINGSTON, | : | |
| ISAIAH ELDEN KINGSTON, and | | District Judge Jill N. Parrish |
| LEV ASLAN DERMEN, | : | Magistrate Judge Brooke C. Wells |
| a/k/a Levon Termendzhyan, | | |
| | : | |
| Defendants. | | |

---

**RESPONSE OF UNITED STATES TO DEFENDANT ISAIAH KINGSTON'S MOTION FOR RECONSIDERATION OF DETENTION**

The United States hereby responds to Defendant Isaiah Kingston's motion for

reconsideration of detention, ECF 117. For the reasons set forth below, the United States

respectfully submits that there is no basis under the Bail Reform Act or the Due Process Clause

1

to reconsider Defendant Isaiah Kingston's pre-trial detention at this time. It has been 3 months and sixteen days since the Court last reviewed Defendant Isaiah Kingston's pre-trial detention. ECF 58.

As the United States explained in its Additional Briefing regarding Speedy Trial and Detention, ECF 114, there are three avenues for review of pre-trial detention. First, the Bail Reform Act provides that a defendant may move for the reopening of his bail hearing at any time before trial upon showing "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Second, the Speedy Trial Act provides that "[t]he trial of any person [detained pre-trial] . . . shall commence not later than ninety days following the beginning of . . . detention." 18 U.S. § 3164(a). The statute explicitly excludes "[t]he periods of delay enumerated in section 3161(h)" from this ninety-day clock. *Id*. Failure to start trial within ninety days (excluding the periods of delay enumerated in section 3161(h)), "through no fault of the accused or his counsel[,] . . . shall result in the automatic review by the court of the conditions of release." 18 U.S.C. § 3164(c). Third, a defendant may move for a review of his pre-trial detention under the Due Process Clause. *United States v. Cos,* 198 F. App'x 727, 732 (10th Cir. 2006) (holding that "at some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding") (emphasis added). Here, Defendant Isaiah Kingston moves to reopen his bail hearing under the Bail Reform Act, alleging new information, and under the Due Process Clause of the Constitution.

I.      Due Process

The Tenth Circuit has explained that "*at some point* due process may require a release

from pretrial release or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by [the Bail Reform Act, 18 U.S.C.] § 3142." *United States v. Accetturo*, 783 F. 2d 382, 288 (10th Cir. 1986) (emphasis added). In determining when this point is reached, courts are to consider: "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based." *Cos*, 198 F. App'x at 732; *see also United States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300, at *2 (applying the *Cos* factors in evaluating a defendant's motion for release from pre-trial detention after eleven months in custody).

With regard to the length of detention, the cases surveyed by the government all involve substantially longer periods than the ones at issue in the case at bar–Defendant Isaiah Kingston has been detained since August 23, 2018 and trial is scheduled to start on May 13, 2019. *E.g., Cos*, 198 F. App'x at 732 (reconsideration of detention based on Due Process Clause after 14 months of detention; motion for release ultimately denied)*; United States v. Peters*, 28 F.3d 114 (10th Cir. 1994) (reconsideration of detention based on Due Process Clause after 34 months of detention; motion for release ultimately denied); *United States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300, at *2 (D. Utah Aug. 27, 2013) (reconsideration of detention based on Due Process Clause held after 11 months of detention; motion for release ultimately denied); *United States v. Aispuro-Haros*, No. CR 11-2293 JH, 2012 WL 13070088 (D.N.M. Dec. 10, 2012) (reconsideration of detention based on Due Process Clause held after 11 months of detention; motion for release ultimately denied); *see also United States v. Millan*, 4 F.3d 1038 (2d Cir. 1993) (reconsideration of detention based on Due Process Clause held after 22 months of detention; motion for release ultimately denied). *But see United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986) (holding that where defendant opposed all continuances, moved for severance, did not join any of codefendants' motions, and sought immediate trial "even if it meant waiving certain rights," pre-trial detention for

longer than five months would raise Due Process concerns).

Tenth Circuit case law notwithstanding, Defendant Isaiah Kingston relies on two out-of-circuit cases to support his request for relief under the Due Process Clause. Both are distinguishable and inapposite for the reasons described below.

Defendant Isaiah Kingston first cites to a District of South Dakota case, *United States v. Archambault*, 240 F. Supp. 2d 1082 (D.S.D. 2002), in which the defendant, who was charged with one count of unlawfully assaulting his girlfriend, resulting in serious bodily injury, filed a motion to reopen his detention hearing after twenty months of pre-trial detention. The length of Archambault's pre-trial detention was largely due to a "fiercely contested battle over the protections afforded by the Double Jeopardy Clause," including an on-going appeal. *Id.* at 1087. The District Court calculated that, if convicted, Archambault would likely face a sentencing guidelines range of 27-33 months, and concluded that "fundamental fairness dictates that a criminal defendant like Archambault, who is presumed innocent, should not be required to serve a substantial portion of the sentence to which he may be subject to before a determination of guilt has been made." *Id.* Further, the Court found that changed circumstances required a re-evaluation of the defendant's risk to the community and risk of flight. In particular, Archambault received treatment for his alcohol addiction; he successfully completed an inpatient substance abuse facility and became sober. He also put together a "viable community based release plan" that specifically addressed the Court's concerns regarding risk of flight and danger to the community. *Id.* at 1086. Finally, Archambault tendered evidence, in the form of a letter from the victim's treating ophthalmologist, that directly undermined an element of the charged offense and therefore "could have a profound effect on the Government's chances of obtaining a conviction." *Id.*

By contrast, Defendant Isaiah Kingston's motion proffers no evidence of a change in circumstances that would require a re-evaluation of the defendant's risk to the community or risk of flight, nor any evidence that undermines an element of a charged offense. In denying his motion for review of detention, following a *de novo* hearing, this Court found that Defendant Isaiah Kingston faced a lengthy sentence if convicted of the charged offenses, that the government set forth strong evidence of his knowledge of the fraud whose proceeds he is alleged to have laundered, that his history and characteristics weighed heavily in favor of detention, and that he presented a danger to any person or the community in light of his witness intimidation efforts. ECF 58. Accordingly, the Court ordered him detained pending trial. *Id.* Nothing in Defendant Isaiah Kingston's motion undermines any of these findings.

Finally, defendant Isaiah Kingston has been detained for 4 months and eleven days, as of January 3, 2019 (3 months and sixteen days have passed since his last motion for review of detention was denied). ECF 58. This period of incarceration is significantly shorter than the twenty months of pre-trial detention at issue in *Archambault*.

Next, Isaiah Kingston relies on a District of New Jersey case from 1987. *United States v. Vastola,* 652 F. Supp. 1446 (D.N.J. 1987). In *Vastola,* the defendants were detained pending a complex, multi-defendant drug trial that was expected to last six months. The trial was set to begin on March 2, 1987, five months after defendants' arrest. However, in December 1986, the trial was continued by six months to September 8, 1987. In light of this continuance, and the fact that the defendants now faced one year of detention prior to commencement of a six-month trial, the Court *sua sponte* announced it would reconsider the issue of detention.

While Isaiah Kingston argues that "[t]he present case is virtually identical in circumstances in *Vastola,*" the only similarity seems to be that the *Vastola* defendants were

detained and received large amounts of discovery. The *Vastola* opinion includes no discussion of

the defendant's risk of flight and the discussion of danger to the community appears to rest

exclusively on the fact that the charges against the defendant involved a statutory presumption in

favor of detention, under 18 U.S.C. § 3142(e). Perhaps most importantly, the defendant in

*Vastola* faced an estimated year and a half of detention prior to verdict. Here, defendant's pre-

conviction detention is significantly shorter. Accordingly, this case is distinguishable from the

case at bar.

> *Cos Factors*

The Tenth Circuit has articulated a three-factor test to determine whether the Due Process

Clause requires a fresh proceeding to review a defendant's pre-trial detention. *Cos*, 198 F. App'x

at 732. These three *Cos* factors are: "1) the length of detention; 2) the extent of the prosecution's

responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention

was based." *Id.* Application of the three *Cos* factors to the case at bar establishes that no such

"fresh proceeding" is required at this time.

> 1. *Length of Detention*

Isaiah Kingston has been detained pre-trial for four months and eleven days. Based on a

review of Tenth Circuit case law, discussed above, this length of detention falls well short of the

length of time usually found to implicate Due Process Clause rights. As discussed further below,

the delay is largely attributable to the size and complexity of the case, which has resulted in

unavoidably voluminous discovery. This, however, is a direct consequence of the scope of the

fraud that Isaiah Kingston is alleged to have committed. According to the Indictment, defendant

Isaiah Kingston and others schemed to steal more than $1.1 billion in fraudulent renewable fuel

tax credits from 2010 through 2016. The complexity of this matter is far greater than the single-

count indictment at issue in *Archambault*. Yet, even that case involved twenty months of pre-trial detention. Accordingly, this factor does not currently weigh in favor of re-opening the detention hearing.

### 2. Prosecution's Responsibility for Delay

Isaiah Kingston argues that the United States is responsible for the delay in trial because of its stated intent to present a Second Superseding Indictment to the Grand Jury. Delay in Isaiah Kingston's trial, to date, however, has not been caused by the prosecution. Rather, any delay has been a result of the complexity of the case, the volume of discovery,[1] co-defendant Jacob Kingston's motion for a continuance, and the strong presumption that defendants charged together be tried together.

Isaiah Kingston further alleges dilatory discovery production. Isaiah Kingston's assertion that no discovery deadline has been met is without basis in fact. The United States provided the first installment of discovery immediately upon entry of the Magistrate's protective order. Any delay in production of the unfiltered search warrant material has been entirely a product of defense counsel's dilatory response to the United States' proposal in early October to produce the material subject to a clawback agreement. Magistrate Judge Wells has since ordered that the material be produced by January 18, 2019. ECF 108. Accordingly, this factor does not currently weigh in favor of re-opening the detention hearing.

### 3. Strength of Evidence Upon Which Detention was Based

The evidence of risk of flight and danger to the community presented to the Court during Defendant Isaiah Kingston's detention was strong. *See* ECF 9 (United States Motion for

---

[1] The non-Attachment B relevant materials sought by the defense, ECF 103, 104, 105, alone, is approximately one terabyte.

Detention of Jacob Kingston and Isaiah Kingston attaching Exhibits A through G); ECF 30 (United States Supplemental Motion for Hearing on Detention as to Isaiah Kingston attaching Exhibits H, I, J-1 through J-3, K); ECF 41 (United States Response to Isaiah Kingston's Motion for Review of Detention); ECF 57 (Hearing before Judge Parrish on September 12, 2018; Transcript filed at ECF 81, including Exhibits L, N-1, N-2, N-3, N-4, O, R); ECF 51 (United States Supplemental Memorandum as to Detention of Isaiah Kingston). The United States addresses, here, only those areas challenged by Defendant Isaiah Kingston in his Motion for Reconsideration:

### a. Strength of the Evidence of the Case

Isaiah Kingston asks this Court to find a due process violation in his pretrial detention because "there was no exigency in bringing the initial indictment against him, other than to save the statute of limitation on two 2013 money laundering counts that were sexy to the Government because they involved an expensive car and an expensive house (neither of which Isaiah Kingston ever had anything to do with)." ECF 117 at p. 5.

This statement in no way contradicts the strength of the government's evidence. The government agrees that Defendant Isaiah Kingston was indicted within the limitations period provided by law. Further, the claim, introduced in a parenthetical, that Isaiah Kingston had nothing to do with the money laundering charges that the grand jury indicted him on, including a violation of 18 U.S.C. § 1957 for using fraud proceeds to purchase the Bugatti (Count 20) and a violation 18 U.S.C. § 1956(a)(1)(B)(i) for using fraud proceeds to purchase Jacob Kingston's residence (Count 18), is entirely without basis in fact.

### b. Evidence of Risk of Flight and Danger to the Community

Through four pleadings, the attached exhibits, and the September 12, 2018 hearing to

review Isaiah Kingston's detention, the United States presented compelling evidence that Isaiah Kingston wired over $52 million in fraudulent proceeds to Turkey, made false statements to the Southern District of New York to conceal Washakie's Turkish assets, exchanged text messages with an Intermediary to hire an enforcer to intimidate witnesses and bribe government officials, and of Isaiah Kingston's role in a scheme to cycle more than $588 million in order to promote the fraud. As explained *infra*, Isaiah Kingston presents no evidence in his Motion to Reconsider Detention to contradict the evidence previously presented. Accordingly, the strength of the evidence upon which detention was based remains strong, and this third *Cos* factor weighs heavily against re-opening the detention hearing at this time.

II.    Bail Reform Act

The Bail Reform Act provides that a defendant may move for the reopening of his bail hearing at any time before trial upon showing "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Here, Isaiah Kingston has not offered any such new, material evidence. The United States will address each assertion of "new information" by Isaiah Kingston below.

1.  Access to Money

Isaiah Kingston argues that new information proves that Isaiah Kingston does not have access to money or a genuine ownership interest in Washakie. ECF 117 at 7-9 ("Access to Money"). Isaiah Kingston provides no proof that he did not have authority over Washakie's funds aside from arguing that he did not flout his wealth or charge personal expenses to a company credit card or account and that he had no "meaningful authority over or actual personal

access to any of the money, regardless of what documents might exist with his name on them."

ECF 117 at 8.

The United States presented clear evidence that Defendant Isaiah Kingston initiated wire transfers totaling $52 million to Turkish bank accounts. ECF 58 at 4. It further proved Isaiah Kingston's joint ownership of WRE at the detention hearing and through its various pleadings.[2] As the Court previously found, "[t]he government has further adduced strong evidence that Kingston, as CFO and 50% owner of Washakie Renewable Energy ("WRE"), the company that served as the vehicle for the fraud, conducted financial transactions with knowledge that they were designed to launder fraud proceeds." ECF 58 at 4. Isaiah Kingston has presented no new information to obviate the compelling evidence of his control over Washakie's accounts and his 50% ownership of Washakie.

Accordingly, Isaiah Kingston's argument that he did not have access to Washakie's money or meaningful ownership of Washakie should be disregarded by this Court.

2. Connections to Turkey

Isaiah Kingston next argues that new, unspecified information provided in discovery proves that Isaiah did not have contacts with Turkey. ECF 117 at pp. 9-10 ("Connections to Turkey"). In particular, Isaiah Kingston argues that "[i]t was learned at the detention hearing for Lev Dermen that by 2014 even Jacob Kingston was off of the accounts through which the

---

[2] As the United States previously argued, Exhibits N-1 through N-4 admitted during the detention review establish that Isaiah Kingston himself signed Washakie's partnership returns for 2011 through 2014, under penalty of perjury. In these returns, specifically in the attached Schedules B-1 and Forms K-1, Isaiah Kingston identified himself as Washakie's 50% owner. Isaiah Kingston had signatory authority over all Washakie bank accounts, and witnesses describe him as the company's chief financial officer. Further, review of Isaiah Kingston's personal income tax returns reveal that Isaiah Kingston reported 50% of the flow-through profits and losses of Washakie for tax years 2011, 2012, 2013, and 2014. The evidence proves that Isaiah Kingston was the 50% owner of Washakie, including any assets held by Washakie in Turkey.

Turkish investing was ultimately done – *accounts that Isaiah never had anything to do with in the first place*." ECF 117 at p. 9 (emphasis added).

However, this statement is belied by the evidence. First, as established at Isaiah Kingston's detention review hearing, Washakie transferred over $134 million of fraudulent proceeds to various accounts in Turkey, including $10 million from Washakie's account to SBK-Turkey. ECF 9 at 6-7 ("Exhibit B"). Defendant Isaiah Kingston personally authorized the transfer of at least $52 million from Washakie's accounts to Turkey between September 2013 and December 2015. (Exhibit 30-1 ("Exhibit H")). Second, at Defendant Dermen's detention review hearing, the government proved that in addition to the $134 million transferred directly from Washakie to Turkey, Defendant Dermen himself made significant transfers to Turkey. In particular, the government showed that Defendant Dermen transferred over $20 million from SBK-USA to SBK-Turkey in 2016, in addition to the more than $18 million he transferred to Turkey from other accounts he controlled. Thus, contrary to Isaiah Kingston's self-serving argument, the evidence presented clearly shows that Isaiah Kingston was centrally involved in sending fraud proceeds to Turkey, including to the SBK-Turkey account.

Isaiah Kingston's statement that he had "no connection to Turkey," and that that the government has offered no evidence of his involvement with Turkey "other than his involvement in wiring money there . . ." are specious at best. ECF 117 at 9. Indeed, the wiring of over $52 million in fraud proceeds to Turkey suggests a very strong connection to and involvement with the country. Further, this claim intentionally exploits a lack of evidence created by Isaiah Kingston's own actions in transferring these funds for Turkey. The United States has no evidence to proffer to the Court as to current authority over these funds *because* Isaiah Kingston moved the fraudulent proceeds outside the arm of the United States' subpoena power.

Accordingly, the Court should disregard Isaiah Kingston's statement that he has no interest in Turkey.

3. Other Matters

Isaiah Kingston next argues that based on new information about the Intermediary – which he does not provide to the Court – the Court should not credit the text messages between Isaiah Kingston and the Intermediary based on allegations by Isaiah Kingston that the Intermediary fabricated documents, made misrepresentations in court pleadings, and attempted to steal land. ECF 117 at 10-11 ("Other Matters").

At the detention hearing, the United States presented evidence of text messages between Isaiah Kingston and an Intermediary relating to payments for an enforcer and for bribes to purported government officials. *See* ECF 30-6 ("Exhibit K").

Notwithstanding the government's expressed concerns for witness safety, the entry of two separate protective orders to address this concern, the evidence of witness intimidation and attempted tampering, and the great care that the United States has taken not to publicly identify a putative government witness, Isaiah Kingston's counsel elected to name the putative witness in his pleading and in an interview with the Salt Lake Tribune. Isaiah Kingston's gratuitous naming of a putative government witness in a highly publicized case provided the Court with no material evidence to assist in its determination and resulted only in the press pursuing the putative government witness. The United States has separately filed a Notice of Defendant Isaiah Kingston's Violation of the Discovery Protective Order and has requested that this Court take appropriate action as it relates to Defendant Isaiah Kingston's violation of the Protective Order.[3]

---

[3] Defendant Dermen's curious response, ECF 120, to the Government's Notice of Isaiah Kingston's Violation of Protective Order, ECF 119, appears to be an attempt to distract from

ECF 119. Notably, the prosecution team has learned that family members of Isaiah Kingston have recently made unwelcome attempts to contact the Intermediary and the Intermediary's family member, both in person and through phone calls.

In his Motion for Reconsideration of Detention, Isaiah Kingston makes various allegations, with no supporting evidence, that the Intermediary is untrustworthy. ECF 117 at 10-11. However, the reliability of the witness is largely irrelevant here as the United States relied on irrefutable text messages between Isaiah Kingston and the Intermediary during the detention hearing. Isaiah Kingston next argues that this text message evidence was "cherry picked, out of context, and incomplete." ECF 117 at 11. But Isaiah Kingston fails to provide any additional "context" to explain the text messages, introduced as Exhibit K, which clearly demonstrate on their face that Isaiah Kingston was communicating in code with the Intermediary with respect to payments for an enforcer and for "CG," the supposed DOJ official interfering with the investigation. Isaiah Kingston offers no explanation as to the content of these text messages. As the Court found in its Order detaining Isaiah Kingston, "though Mr. Kingston now represents himself as a mere 'errand boy' in this effort, his texts make clear that he knew about and acted to support its full scope." ECF 58 at p. 6.

III.     Prosecution of Co-Conspirators

Isaiah Kingston next argues that a review of related prosecutions indicates that defendants in related prosecutions of co-conspirators were not detained pending trial or sentencing, despite that fact that those cases involved large frauds as well. ECF 117 at pp. 11-12. This argument should be disregarded as those cases did not include $134 million of proceeds

---

Defendant Isaiah Kingston's Violation of the Court's Protective Order, and we respectfully submit that this Court should disregard it.

transferred to Turkey, perjury in filings before the District Court for the Southern District of New York to protect Turkish assets, or text message evidence of attempted payments to enforcers and bribes to purported government agents.

IV.     Health Concerns

Finally, Isaiah Kingston requests to be released in order to treat cancer and ulcerative colitis. The United States agrees that Defendant Isaiah Kingston needs to receive adequate medical treatment while detained pre-trial. The Weber County Jail was unable to provide medical information to the United States due to the restrictions of the Health Insurance Portability and Accountability Act ("HIPAA"). The United States Marshals Service ("USMS") stated that the Weber County Jail is addressing defendant Isaiah Kingston's medical needs and that he is seeing a doctor several times a month. The USMS advises that the Court can request Isaiah Kingston's medical records. Upon request from the Court, the USMS will procure them from the Weber County Jail and transmit them to the Court.

For all these reasons, the government respectfully submits that the Court should deny Defendant Isaiah Kingston's Motion for Reconsideration of Detention.

Respectfully submitted this 3rd day of January, 2019.

JOHN W. HUBER
United States Attorney

*/s/ Leslie A. Goemaat*
LESLIE A. GOEMAAT
ARTHUR J. EWENCZYK
RICHARD M. ROLWING
Special Assistant United States Attorneys
JOHN E. SULLIVAN
Senior Litigation Counsel

<u>Certificate of Service</u>

I certify that on the 3rd day of January, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF electronic filing system, which will send notice of electronic filing to counsel of record in this case.

<div style="margin-left:50%">

*/s/ Leslie A. Goemaat*
LESLIE A. GOEMAAT
Special Assistant United States Attorney

</div>