


SCOTT C. WILLIAMS (6687)
Attorney for Defendant
43 East 400 South
Salt Lake City, Utah 84lll
Telephone: (801)220-0700
Facsimile: (801) 364-3232
scwlegal@gmail.com

UNITED STATES DISTRICT COURT
CENTRAL DIVISION, DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>ISAIAH ELDEN KINGSTON,<br><br>  Defendant. | DEFENDANT ISAIAH KINGSTON'S MOTION FOR *DE NOVO* REVIEW OF MAGISTRATE JUDGE WELLS' ORDER DENYING REQUEST FOR RECONSIDERATION OF DETENTION<br><br>Case No. 2:18-cr-365-JNP<br><br>District Court Judge Jill N. Parrish<br>Magistrate Judge Brooke Wells |

Defendant Isaiah Kingston, pursuant to DUCrimR 57-16(a), hereby requests *de novo* review of Magistrate Judge Wells' Order Denying Request for Reconsideration of Detention of Isaiah Kingston (Doc. 180), issued on February 8, 2019.

Isaiah Kingston respectfully submits that Magistrate Judge Wells failed to adequately address and consider appropriate and material factors impacting the violation of Isaiah's due process rights by continued pre-trial detention despite repeated delay of his trial.  Isaiah also respectfully submits that sufficient information has come to light since this Court's initial decision to detain Isaiah, which was not known to Isaiah or this Court at the time, that has a material bearing on the question of whether there are conditions of release that will reasonably assure his appearance

1

and the safety of other persons and the community.  18 U.S.C. §3142(f)(2).

Isaiah Kingston asks this Court to incorporate the various pleadings that were before Magistrate Judge Wells on the matter.  (EFC No.s 117, 122, 126, 161.)  He also asks this Court to incorporate the information and evidence proffered at the hearing on both his and Jacob Kingston's detention review motions.  (EFC No. 174, January 31, 2019.)

This Court may reopen and reconsider Mr. Isaiah Kingston's detention at any time before trial, pursuant to U.S.C. § 3142(f), as circumstances may necessitate.  *United States v. Archambault*, 240 F.Supp.2d 1082, ¶6 (DSD 2002), citing *United States v. Black*, 343 F.2d 34, 37 (7th Cir. 1976).  Factors that should be considered upon reopening the detention issue include not only the statutory factors, and factors drawn from case law applying the statute, but by due process concerns driven by the fundamental significance of pre-trial detention:

> Aside from the gateway for further review provided by §3142(f), the Court believes that the detention issue must also be reopened for a more fundamental reason, that being, to examine the due process implications of [the defendant's] continued detention.

*Archambault*, at ¶9.  The Government acknowledges this principle in its recent pleading [Doc. 114] at page 2, citing *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006) (holding that "*at some point* due process may require a release from pretrial detention or, at a minimum, a fresh proceeding") (emphasis added).

In *United States v. Salerno,* 481 U.S. 739 (1987), United States Supreme Court held that Congress had a legitimate regulatory goal in relation to the Bail Reform Act which allowed for pretrial detention in certain cases.  However, in the same decision, the Court acknowledged that it was intimating "no view as to the point at which detention in a particular case might become extensively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id*. at 747, n.4.  The *Archambault* decision articulated this aspect of the *Salerno* decision, at ¶¶10-11, citing many cases from

various jurisdictions which stand for the settled proposition that prolonged pre-trial detention may become excessive and consequently punitive so as to offend due process constraints.

The Government's position with regard to the due process considerations applicable to Isaiah Kingston has simply been that, despite the repeated delays in getting the case to trial, which are either the fault of the Government or due to actions of other parties, Isaiah has simply not *so far* suffered enough pre-trial detention to implicate due process concerns. Isaiah has argued that this Court should consider the *inevitable* delay that he will suffer based upon the *reality* of the future course of the case, and has cited to case law that supports such a consideration. However, Magistrate Judge Wells followed the Government's lead and considered the due process issue only with regard to the present May 13, 2019 trial date. (EFC No. 180 at pp. 4-5.)

Isaiah respectfully submits that a fair analysis of the length of detention factor must consider the fact that the May 13, 2019 trial date *will not hold*. On January 15, 2019 Jacob Kingston's counsel filed a notice with this Court that, due to a change in another trial that they are involved with in New York, the May trial date would no longer be practicable. (EFC No. 131.) Further, as Isaiah has consistently and repeatedly asserted would happen, the addition of other defendants in the Second Superseding Indictment has resulted in the inability of counsel for those new defendants to adequately prepare for a May 13, 2019 trial, and they have moved for a continuance. (EFC No. 185.) There is no telling when a trial will be had on this case, except that it will not be for many more months. It is fair to presume that Isaiah's pre-trial detention will be greater than one year by the time that a fair trial can be had for all defendants.

It is simply unfair to continue to detain Isaiah virtually indefinitely for reasons absolutely unattributable to him. The Government can't be faulted for the challenges to the trial schedule that have resulted from Jacob Kingston counsel's schedules. However, those challenges have not in fact been the real cause of the trial delay. The addition of defendants to the Second Superseding Indictment is the

true cause, and it is all the fault of the Government. It has always been obvious that, if additional defendants were added to the case, their counsel would need adequate time and opportunity to prepare for trial. The Government has been in absolute control over the timing of Indictment. As Isaiah has repeatedly predicted, the Second Superseding Indictment implicates no different scheme or additional charges other than those that have been contemplated by the original defendants. The discovery further supports that there is nothing of significance in the Second Superseding Indictment that was not part of the case implicated by the first Indictment, filed on August 1, 2018. Thus, the six months between the indictments has been unnecessary and simply a waste of time in detention for Isaiah. There is no reason that the charges in the Second Superseding Indictment could not have been articulated in an initial indictment, or why an initial indictment couldn't have included all defendants that are now charged.

It is particularly ironic and stinging to Isaiah that the Government has not sought the pre-trial detention of the two additional defendants, the addition of which has caused inevitable trial delay. This is despite the fact that they stand in no significantly different position than Isaiah when it comes to the Government's arguments for his detention. For instance, it is the Government's position that Sally Kingston, in August of 2018, was on a plane in the process of fleeing to Turkey with her husband Jacob. It is the Government's position that Sally Kingston was involved in the conspiracies alleged in the Second Superseding Indictment, which included alleged transfers of large amounts of money to Turkey. She resided in the home alleged to have been purchased as a result of alleged criminal activity and proceeds. Yet the Government has not sought her pre-trial detention, and has acquiesced that she can be managed on release with conditions. No evidence has been presented that Isiah has ever even been to Turkey, nor traveled in any manner that would support an inference that he would flee. There is no evidence that he has benefited personally in any significant way from the proceeds of the alleged fraud activity. Yet he remains detained.

Similarly, the Government has not sought detention of co-defendant Rachel Kingston, despite

the fact that her circumstance is even less distinguishable from Isaiah's on the issues of detention. She is alleged to be involved directly in the transfer of money to Turkey, and was in fact more involved than Isaiah in the transactional activities upon which the conspiracy charges are based. She filed the very same false affidavits in the New York case that have been held against Isaiah, and she is mentioned in the text evidence between Santiago Garcia and Jacob Kingston (and to a far lesser extent Isaiah) that have been argued against Isaiah.

At the initial appearance of co-defendants Sally Kingston and Rachel Kingston, on January 22, 2019, Magistrate Judge Paul Warner asked the Government to proffer a description of the relative culpability of the defendants charged in the Second Superseding Indictment. The Government responded as follows: "The Government sees the two Kings as Jacob Kingston and [Lev Dermen], and the Queen as Rachel Kingston. Isaiah and Sally are less culpable in the grand scheme of things." It defies credulity that the Government should nonetheless agree to the release of Rachel and Sally on conditions pending trial, but continue to detain Isaiah.

An overwhelming amount of new information material to the issues that were most prevalent to the initial detention decision now exists:

The Government has described a hierarchy of criminal liability that places Isaiah at the lowest level—below a co-defendant who's detention has not even been sought.

Jacob Kingston has now provided a detailed accounting related to the money transfers to Turkey and described why and how they came about. Most importantly, in so doing, he has acknowledged that Isaiah, as CFO, engaged in the transactional history of the money transfers, had nothing whatsoever to do with obtaining the funds or any decisions about what to do with them. Such evidence therefore corroborates his original contentions (which he could not then demonstrate because *he did not know*) that he has no true access to or control over any of the moneys involved in the alleged conspiracies, much less the money in Turkey—a place to which the Government has not alleged he has even ever

been.

The false affidavit actions from the New York *Lifetree* case have now been shown to be of lesser concern in relation to detention issues, since co-defendant Rachel Kingston engaged in the exact same behavior, but the Government did not seek her detention.

The scenario involving the extortion by Santiago Garcia of Jacob Kingston, only partially represented in the out-of-context text streams initially provided by the Government, has now been more fully exposed.  The Government withheld key material information about the circumstance, including that Garcia was a formal government informant at the time, who has a criminal history of fraud and false information offenses that would make Paul Manafort blush, and is nonetheless receiving leniency, immigration and other consideration in return for his use by the Government in the extortion activity against Jacob Kingston.  Jacob Kingston's attorneys have now also been able to proffer the truly sinister nature of the gravamen of the extortion operation, shedding light on why Jacob was enticed into the endeavor.  Most importantly however, as the Garcia extortion operation has been more fully revealed, it remains the case that, to the extent that Isaiah was involved in it, it was only to deliver payments for Jacob.  He will never be in such a circumstance again.

There are other new aspects of the key detention issues that can be presented to this Court at the time of a *de novo* reconsideration of his detention.

## CONCLUSION

The *Cos* factors support Isiah Kingston's request that this Court release him on conditions pending trial.  His pre-trial detention has become punitive, in violation of his due process rights.  He will not be tried in May of this year, and it is likely that he will not ultimately be tried within a year of his original detention.  There is absolutely no reason that the Government could not have indicted all of the present co-defendants together, and the Government is therefor solely responsible for all of the delay occasioned by the delayed Second Superseding Indictment, and that fact that adding defendants in that

6

delayed indictment inevitably caused the need for further delay in trial.  Further, as information related to some of the key factors upon which the original detention determination has been developed, there is reason to second guess the significance of those factors as they apply to Isaiah Kingston personally.

Just as the Government has acknowledged is the case with the similarly situated co-defendants Sally and Rachel Kingston, there are a set of conditions which will ensure Isiah's presence at trial and safety to the community.  He respectfully requests that this Court reconsider his detention in light of the legal presumption that he should be released, together with the impact that delay has had—and will continue to have--on his due process rights.

Respectfully submitted this 16th day of February, 2019.

/s/ Scott C. Williams
Scott C. Williams
Attorney for Defendant Isaiah Kingston

DELIVERY CERTIFICATE

I certify that a true and correct copy of the foregoing was caused to be delivered, through electronic filing, to the following:

leslie.a.goemaat@usdoj.gov
richard.m.rolwing@usdoj.gov
arthur.j.ewenczyk@usdoj.gov
john.e.sullivan@usdoj.gov

on the 16th day of February, 2019.

/s/ Scott C. Williams