JOHN W. HUBER, United States Attorney (#7226)
ARTHUR J. EWENCZYK, Special Assistant United States Attorney (NY #5263785)
LESLIE A. GOEMAAT, Special Assistant United States Attorney (MA #676695)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682
Email:  arthur.j.ewenczyk@usdoj.gov
        leslie.a.goemaat@usdoj.gov
        richard.m.rolwing@usdoj.gov
        john.e.sullivan@usdoj.gov

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 18-CR-365-JNP |
| Plaintiff, | : | |
| v. | : | |
| JACOB ORTELL KINGSTON, | : | GOVERNMENT'S RESPONSE TO DEFENDANT ISAIAH KINGSTON'S |
| ISAIAH ELDEN KINGSTON, | | MOTION FOR *DE NOVO* REVIEW OF |
| LEV ASLAN DERMEN, | : | MAGISTRATE JUDGE WELLS' ORDER |
| a/k/a Levon Termendzhyan, | | DENYING REQUEST FOR |
| RACHEL ANN KINGSTON, and | : | RECONSIDERATION OF DETENTION. |
| SALLY LOUISE KINGSTON | | |
| | : | |
| Defendants. | | |
| | | District Judge Jill N. Parrish |
| | | Magistrate Judge Brooke C. Wells |

The United States hereby responds to Isaiah Kingston's Motion for *De Novo* Review of

Magistrate Judge Wells' Order Denying Request for Reconsideration of Detention. ECF 189. At

the February 19, 2019 hearing, the court scheduled a hearing on this motion for March 4, 2019.

The United States respectfully submits for the reasons stated herein that Defendant Isaiah

Kingston has failed to show that Judge Wells' Order is contrary to law or clearly erroneous and

requests this Court deny Defendant Isaiah Kingston's motion without a hearing.

I.      Procedural Background

On August 23, 2018, the first three defendants were arrested pursuant to a sealed arrest warrant.

On August 24, 2018, the United States filed Government's Motion for Detention of Jacob Ortell Kingston and Isaiah Elden Kingston attaching Exhibits A through G. ECF 9.

On August 31, 2018, a detention hearing was conducted as to Isaiah Kingston before Magistrate Judge Wells, who heard witness testimony and received evidence, and found that the government had met its burden of proving by a preponderance of the evidence that Defendant Isaiah Kingston posed a risk of flight and that the government had met its burden of proving by clear and convincing evidence that Defendant Isaiah Kingston posed a risk of danger to the community. Defendant Isaiah Kingston was ordered detained pending trial. ECF 37.

Defendant Isaiah Kingston moved for review of Magistrate Judge Wells' order of detention pursuant to 18 U.S.C § 3145(b). This Court conducted a *de novo* review of Magistrate Judge Wells' order of detention on September 12, 2018, hearing testimony and receiving evidence, ECF 57. At the conclusion of the *de novo* hearing, this Court ordered additional briefing by Isaiah Kingston and the United States. ECF 50, 51. On September 18, 2018, this Court ordered Defendant Isaiah Kingston detained pending trial. ECF 58.

Isaiah Kingston filed a Request for Reconsideration of Detention on December 31, 2018. ECF 117. The United States filed a Response, ECF 121, and Isaiah Kingston filed a Reply, ECF 126. Magistrate Judge Wells heard oral argument on January 31, 2019, took the matter under advisement, and denied Isaiah Kingston's Motion by written order. Doc 180.

Isaiah Kingston filed a Motion for *De Novo* Review of Magistrate Judge Wells' Order

Denying Request for Reconsideration of Detention with this Court. ECF 189.

    II.    **Defendant Kingston Fails to Show Judge Wells' Order is Contrary to Law or Clearly Erroneous**

Defendant Isaiah Kingston moves for a *de novo* review of Judge Wells' Order Denying his Motion for Reconsideration of Detention pursuant to 18 U.S.C. § 3142(f). This is not the correct standard of review.  Isaiah Kingston was entitled to a *de novo* review of the magistrate judge's order of detention, pursuant to 18 U.S.C. § 3145(b) and DUCrimR 57-16(a)(1). The Court heard his motion and denied it. ECF 58. The defendant is also allowed to move to reopen his detention hearing upon a showing of new, material information. 18 U.S.C. § 3142(f). Magistrate Judge Wells heard the defendant's motion to reopen his detention hearing and denied it. ECF 180. However, Defendant Isaiah Kingston is not now entitled to a *de novo* review of the magistrate judge's order denying his motion to reopen his detention hearing.

Isaiah Kingston's motion to reopen his detention hearing was a non-dispositive motion. Accordingly, review of Magistrate Judge Wells' ruling on his motion is governed by Rule 59(a) of the Federal Rules of Criminal Procedure, which provides that a district judge may refer non-dispositive motions to a magistrate judge, and that the "district judge must consider timely objections and modify or set aside any part of the order that is *contrary to law or clearly erroneous.*" *See also* 28 U.S.C. § 636(b)(1)(A); *accord United States v. Weston*, No. 2:06-CR-303, 2007 WL 1555798, at *2 (D. Utah May 22, 2007). Under this deferential standard, the court will affirm a magistrate judge's ruling unless the court, exercising independent judgment, "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

Judge Wells received extensive briefing and heard oral argument as to whether Defendant Isaiah Kingston's detention hearing should be reopened. *See* ECF 117 (Defendant Isaiah Kingston's Motion for Reconsideration of Detention); Doc 121 (Government Response); Doc 126 (Government Reply); ECF 174 (hearing before Magistrate Judge Wells). Judge Wells took the issue under advisement and issued a written order. ECF 180. In her Order, Judge Wells properly addressed Isaiah Kingston's motion to reconsider detention under the Bail Reform Act and Due Process. No part of Judge Wells' ruling is contrary to law or clearly erroneous.

A.  Due Process

Regarding Isaiah Kingston's claim under Due Process, Judge Wells correctly cited to the *Cos* factors, holding that his Due Process claim should be evaluated with consideration of "1) length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based." ECF at p. 4. Judge Wells distinguished the New Jersey District Court and South Dakota District Court cases cited by defense counsel. ECF 180 at pp. 4-5. Applying the *Cos* factors, Judge Wells found that the trial date of May 13, 2019 would result in nine months of detention for Isaiah Kingston. ECF 180 at p. 4.  As to the second factor, Judge Wells found that the delays have been "a result of the complexity of the case, volume of discovery, Jacob's requests for continuance and the presumption the defendants want to be tried together." ECF 180 at p. 5. As to the third factor, Judge Wells found that the evidence of flight risk and danger to the community is strong, including "evidence that Isaiah wired over $52 million in fraudulent proceeds to Turkey, made false statements to the Southern District of New York to conceal Washakie's Turkish assets, exchanged text messages with an intermediary to hire an enforcer to intimidate witnesses and bribe government officials, and was involved in a scheme to cycle more than $588 million in order to promote fraud."

ECF at p. 180 at p. 5.

Judge Wells correctly cited to the *Cos* factors in evaluating a claim under due process and performed a soundly reasoned factor-by-factor analysis, ultimately concluding that the *Cos* factors did not militate toward pre-trial release. This conclusion is neither contrary to law nor clearly erroneous.

B.  Bail Reform Act

Title 18 Section 3142(f) permits a detention hearing to be "reopened . . . at any time before trial if the judicial officer finds that the information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *See also United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003).

Regarding Isaiah Kingston's claim under the Bail Reform Act, Judge Wells found that Isaiah Kingston did not offer any "new" evidence or information. Rather, Isaiah Kingston merely argued, again, that he did not have access to the money or genuine ownership in Washakie. Judge Wells rejected this argument based on previous "strong evidence that Isaiah is CFO and 50% owner of Washakie and that he initiated wire transfers totaling $52 million to Turkish banks." ECF 180 at p. 6. Isaiah Kingston next argued that that the information presented through Jacob Kingston's filings regarding the identity of various companies that received the fraudulent proceeds in Turkey proves that Isaiah Kingston did not have a connection to Turkey. Judge Wells rejected this argument, citing to the evidence that Isaiah wired at least $52 million from Washakie to Turkey. Isaiah Kingston argued that the evidence regarding the intermediary was "untrustworthy." Judge Wells rejected this argument, finding that "the credibility of the intermediary is not an issue at this juncture. The government relied on specific text messages between Isaiah and the intermediary and there is no

evidence before the court that the text messages were 'cherry picked, out of context or are incomplete.'" ECF 180 at p. 6. Isaiah Kingston finally argued that co-conspirators in other large renewable fuel cases were not detained. Judge Wells rejected this argument on the basis that the cases cited by Isaiah Kingston did not involve $134 million transferred to Turkey, allegations or bribes, or "perjured filings in other cases regarding the Turkish assets." ECF 180 at p. 6. Judge Wells found that "[n]one of these arguments were 'new' or based on 'new information.'" ECF 18 at p. 6.

Judge Wells' Order correctly found that the defendant had failed to present any new information "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community[,]" as required by 18 U.S.C. § 3142(f). Accordingly, the order is neither contrary to law nor clearly erroneous. The United States respectfully requests that this Court deny Isaiah Kingston's motion and vacate the March 4, 2019 hearing.

III.   Even Under *De Novo* Review, Defendant Isaiah Kingston is Not Entitled to a New Detention Hearing

A.   Due Process

Defendant Isaiah Kingston's arguments in his motion for release under due process, ECF 189, were also made in his first Motion for Reconsideration of Detention, ECF 117. For the reasons articulated in the United States' Response to Isaiah Kingston's Motion for Reconsideration of Detention, due process does not require Isaiah Kingston to be released at this time. ECF 121 at pp. 2-9. Should this Court continue the May 13, 2019 trial date to a date prior to July 23, 2019 based on the unavailability of Jacob Kingston's counsel and the joint motion to continue by Defendants Rachel and Sally Kingston, Defendant Isaiah Kingston will have been detained for less than 11 months at the start of trial. Based on the facts and circumstances of this case, the analysis of the *Cos* factors, and a review of the Tenth Circuit case law, this period of

pre-trial detention based on the strong evidence of flight risk and danger does not violate Isaiah

Kingston's due process rights. *See also* Government's Brief Regarding Reasonableness under 18

U.S.C. §§ 3161(h)(6) and 3164. ECF 199 at p. 5 & n.2.

      B.  Bail Reform Act

     In his motion before this Court, ECF 189, Isaiah Kingston states that the Court may reopen

and reconsider Isaiah Kingston's detention "at any time before trial, pursuant to U.S.C. § 3142(f), as

circumstances necessitate." Isaiah Kingston again misstates the legal standard. Pursuant to 18 U.S.C.

§ 3142(f):

> The hearing may be reopened, before or after a determination by the judicial officer,
> at any time before trial if the judicial officer finds that information exists that was not
> known to the movant at the time of the hearing and that has a material bearing on the
> issue whether there are conditions of release that will reasonably assure the
> appearance of such person as required and the safety of any other person and the
> community.

     Isaiah Kingston's motion argues four areas of purported new information.

     First, Isaiah Kingston cites to the Government's description of Isaiah Kingston's relative

culpability in response to Judge Warner's questioning at arraignment of Rachel and Sally Kingston.

ECF 189 at p. 5. This does not have a "material bearing on the issue" of flight or danger.

     Second, Isaiah Kingston cites to Jacob Kingston's "detailed accounting" of the transfers to

Turkey.[1] Jacob Kingston's claims as to how exactly some of the fraudulent proceeds were invested

---

[1] As explained in the Government's Response to Jacob Kingston's Motion for Pre-Trial Release
on Conditions, Jacob Kingston's recitation of his transactional history in Turkey lacks hallmarks
of reliability. For example, Jacob Kingston claimed Doga Dogan, an entity to which he wired
more than $500,000, was a travel agent involved in booking vacations. However, wire
authorizations submitted to the Bank of Utah indicate that the July 22, 2014 transfer of $200,000
to Doga Dogan was for "biodiesel equipment." *See* ECF 141 Exhibit T. Further, transfers to and
from Komak Isi Yalitim Sistamleri Sanayi ("Komak") bear all the hallmarks of concealment
money laundering transactions. Recently-reviewed bank records revealed that shortly after
Washakie wired $22 million to Komak, Komak wired $18 million to entities controlled by Lev
Dermen. Specifically, on September 9, 2013, Washakie wired $9 million to Komak. Within ten

has no "material bearing" on Isaiah Kingston's risk of flight or danger.  Isaiah Kingston also asserts,

with no basis, that Jacob Kingston "has acknowledged that Isaiah, as CFO, engaged in the

transactional history of the money transfers, had nothing whatsoever to do with obtaining the funds

or any decisions about what to do with them." ECF 189 p. 5. The record clearly reflects that Jacob

Kingston made no such assertion. The Court should disregard this argument.

Third, Isaiah Kingston argues that the false affidavit in the Southern District of New York

has been "shown to be of lesser concern" because the Government did not seek Rachel Kingston's

detention. The United States sought a $10 million bond for Rachel Kingston, in part because of her

false statements to the Southern District of New York. The magistrate judge denied that motion and

instead released Rachel Kingston with GPS monitoring. This fact in no way obviates Isaiah

Kingston's false statements, which were "a deliberate attempt to evade discovery into the Turkish

assets." ECF 58. First, this is not "new information." Rather, it is a release ruling by a magistrate

judge as to a different defendant with a different set of facts and circumstances. Second, to the extent

this court deems Rachel Kingston's detention status to constitute "new information," it does not have

a material bearing on whether there are conditions that can assure *Isaiah Kingston's* appearance or

the safety of the community from *Isaiah Kingston*, as detention is a determination that must be made

upon the facts and circumstances of each individual defendant appearing before the Court.

Fourth, Isaiah Kingston argues that the Government "withheld key material information"

about the intermediary, including the fact that the intermediary was at one point a government

informant. This is not new information as Isaiah Kingston elicited the intermediary's informant status

---

days, Komak had wired $9 million (minus wire fees) to Speedy Lion Renewable Fuel
Investments, an entity controlled by Dermen. On December 31, 2013, Washakie wired an
additional $13 million to Komak. Three weeks later, Komak again transferred $9 million to
Dermen's Speedy Lion account. However, Jacob Kingston has submitt3ed to this Court that
wires to Komak were merely an investment, without disclosing to the Court that Komak had
immediately wired $18 million back to Lev Dermen. ECF 141 at p. 13.

during cross-examination of SA Wade Berrett. ECF 81 at p. 147-48 (Special Agent Berrett testified that the intermediary received immunity). Additionally, the danger posed by Isaiah Kingston's involvement in the intermediary's scheme is revealed entirely through text messages – the authenticity of which have never been disputed by Isaiah or Jacob Kingston – wherein Isaiah Kingston is clearly speaking in code about the enforcer "OTEB" and "CG" (Commissioner Gordon, the purported DOJ official). The text messages make clear that Isaiah Kingston delivered cash to the intermediary for the express purpose of bribing these persons and others. The text messages speak for themselves, and the history of the intermediary's cooperation with law enforcement has no bearing on Isaiah Kingston's state of mind when he sent those text messages and the danger to the community that he poses based on his uncontested history of participating in a clear scheme to hire enforcers to tamper with witnesses and to bribe government officials.

In short, there is no new information, and to the extent the Court finds information submitted about the intermediary to be new, it has no "material bearing" on Isaiah Kingston's danger to the community, as the probative value of the scheme has always been the irrefutable text messages sent by Isaiah Kingston. As this Court previously held, "though Mr. Kingston now represents himself as a mere "errand boy" in this effort, his texts make clear that he knew about and acted to support its full scope." ECF 58 at p. 6.

Isaiah Kingston has failed to present new information that "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community[,]" as required by 18 U.S.C. § 3142(f). Accordingly, there is no basis at this time under the Bail Reform Act to re-open Isaiah Kingston's detention.

IV.    Defendant Isaiah Kingston Poses a More Serious Flight Risk and Danger than
       Rachel and Sally Kingston

During the February 19, 2019 hearing, the Court requested that the United States address

the potentially disparate treatment between the male and female defendants. At the arraignment

of Rachel Kingston and Sally Kingston, the United States requested that Defendants Rachel

Kingston and Sally Kingston each post a $10 million bond, secured by separate property, due to

risk of flight. Magistrate Judge Warner denied that request and released Defendants Sally and

Rachel Kingston on conditions, including 60 days of GPS monitoring. ECF 144; 148; 149.

There are several critical distinctions as to the evidence of risk of flight and danger to the

community between Defendants Rachel Kingston and Sally Kingston and Defendant Isaiah

Kingston, which show how the United States' requests as to conditions of release were tailored

to the evidence of flight for each individual defendant.[2]

A.  Risk of Flight

First, Isaiah Kingston was the 50% owner of Washakie Renewable Energy, which

fraudulently claimed $1.1 billion in renewable fuel tax credits, which received $511 million in

said credits, and which transferred over $100 million of the fraud proceeds to Turkey. Neither

Rachel nor Sally Kingston had an ownership in Washakie Renewable Energy, or for that matter,

the proceeds in Turkey. Further, the evidence does not show that Sally and Rachel Kingston had

the same authority, control, and access over the fraudulent funds as Isaiah Kingston. Indeed, only

Jacob Kingston, Isaiah Kingston, and Lev Dermen were charged in the money laundering

---

[2] If the United States develops additional evidence that either Rachel or Sally Kingston pose a
danger to the community or additional evidence that Rachel or Sally Kingston intend to flee, the
United States will move for detention of Rachel or Sally Kingston.

conspiracy to transfer proceeds of the fraud to Turkey.[3] Rachel Kingston is charged with several substantive money laundering offenses, in violation of 18 U.S.C. § 1957, for participating in transfers of fraud proceeds to Turkey, but for each of these wires, Rachel Kingston first "created" the wire request, which had to be authorized by Isaiah Kingston.

Indeed, Isaiah Kingston authorized more than $52 million in fraud proceeds to Turkey.[4] *See* ECF 57 (Isaiah Kingston Detention Hearing) Exhibit H. Rachel Kingston and Sally Kingston did not. Further, the United States does not have evidence that Rachel and Sally Kingston participated in the $483,000 wire to Turkey for the "waterside house (mansion)." *See* ECF 57 (Isaiah Kingston Detention Hearing) Exhibit I.  By contrast, Isaiah Kingston authorized that wire.

Moreover, unlike Isaiah Kingston, no witness has stated that either Rachel Kingston or Sally Kingston have expressed an intent to flee to Turkey or elsewhere. Further, no witness has stated that Rachel Kingston has traveled to Turkey.

Sally Kingston has had several opportunities to flee; she has not. First, when Jacob Kingston was arrested *en route* to Turkey with Sally Kingston and several of his children, Sally Kingston elected *not* to continue to Turkey without Jacob Kingston. This strongly suggested to the United States that Sally Kingston would not flee to Turkey without her husband and co-Defendant Jacob Kingston, who remains detained. Second, the United States obtained arrest

---

[3] Isaiah Kingston argues that Sally Kingston was involved in conspiracies alleged in the Second Superseding Indictment, which included transfers of large amounts of money to Turkey. ECF 189 at p. 4. This is inaccurate. Isaiah Kingston is charged in Count 24 with a money laundering conspiracy with Jacob Kingston and Lev Dermen which includes the transfers of fraudulent proceeds to Turkey. Sally Kingston is not charged in this count of the Second Superseding Indictment.

[4] Isaiah Kingston asserts in his motion that his mother, Rachel Kingston, "was in fact more involved than Isaiah in the transactional activities upon which the conspiracy charges are based," but provides no evidence to support this assertion. ECF 189 at p. 5.

warrants for Rachel Kingston and Sally Kingston on the Second Superseding Indictment based on a concern of flight. After avoiding a morning arrest, Sally Kingston self-surrendered on the afternoon of Friday, January 18, 2019. At the request of counsel for Jacob Kingston, and without a hearing, Magistrate Judge Warner released Sally Kingston and allowed her to re-appear on her own recognizance after the three-day weekend on Tuesday, January 22, 2019.[5] She did so. Rachel Kingston also self-surrendered on Tuesday, January 22, 2019, despite having constructive notice of charges brought against her. In short, both Sally and Rachel Kingston were presented with opportunities to flee after the return of the Second Superseding Indictment and they did not.

### B.  Danger to the Community

As to danger to the community, the United States does not have evidence of text

---

[5] At this Arraignment, Magistrate Judge Warner asked the United States about the relative culpability of Rachel and Sally Kingston, which gave rise to the now oft-quoted and cherry-picked statement, "Rachel is the Queen." The full statement by the Government in response to Magistrate Judge Warner's question was: "The Government sees the two Kings as Jacob Kingston and Levon Termendzhyan, and the Queen as Rachel Kingston. Isaiah and Sally are less culpable in the grand scheme of things and Sally, I would put as the least culpable, in a scheme that was trying to steal over a billion and launder hundreds of millions, so saying she is the least culpable doesn't say a lot given the scheme and the severity of their offense." A defendant's relative culpability to co-defendants is not a factor under the Bail Reform Act, but the Government nonetheless attempted to answer the Court's question. That said, Defendant Isaiah Kingston's repeated reliance on the Government's exchange with Magistrate Judge Warner is misplaced as it is not "new information" material to *his* risk of flight or danger to the community. All five defendants here are charged in a $1 billion fraud scheme. Any possible gradation of culpability between the five defendants is a red herring as to the issue of detention, where the relevant inquiry is whether the specific individual defendant poses an unmitigable risk of flight or danger. Here, the United States concluded based on the constellation of evidence that no conditions could ensure Isaiah Kingston's appearance at trial and the safety of the community. Based on the evidence regarding Rachel and Sally Kingston, the United States concluded that a $10 million bond, secured by separate property, could sufficiently assure the appearance of Rachel and Sally Kingston, notwithstanding the risk of flight posed by the large loss, potential sentencing exposure, and Rachel Kingston's false statements to the Southern District of New York and participation in wires to Turkey, because Rachel and Sally Kingston did not appear to have the same level of authority, control, and access to the fraudulent proceeds enjoyed by Jacob and Isaiah Kingston.

messages between Rachel and Sally Kingston and the intermediary attempting to hire enforcers or bribe government officials. Additionally, the United States does not have evidence of Rachel or Sally Kingston delivering cash bribes to the intermediary. By contrast, the United States presented evidence of Isaiah Kingston's text message with the intermediary regarding both "OTEB" and "CG." ECF 30 Exhibit K.  In addition, these text messages prove that Isaiah Kingston met with the intermediary to deliver cash for bribes of "Commissioner Gordon," Beto ("OTEB"), and others. *Id.* Thus, the United States proved by clear and convincing evidence that Isaiah Kingston posed a danger to the community. The United States is not able to meet that burden, at this time, as to Rachel and Sally Kingston.

Respectfully submitted this 25th day of February 2019:

JOHN W. HUBER
United States Attorney

/s/ Leslie A. Goemaat
LESLIE A. GOEMAAT
ARTHUR J. EWENCZYK
RICHARD M. ROLWING
Special Assistant United States Attorneys
JOHN E. SULLIVAN
Senior Litigation Counsel

<u>Certificate of Service</u>

      I certify that on the 25th day of February 2019. I caused a copy of the foregoing to be filed through the CM/ECF electronic filing system, thereby causing a true and correct copy of the foregoing to all counsel of record.

<u>/s/Leslie A. Goemaat  </u>
LESLIE A. GOEMAAT
Special Assistant United States Attorney